BRIAN MICHAELS, OSB # 925607
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401
541-687-0578
Fax no. 541-686-2137
brian@brianmichaelslaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| LEA MOI A.K.A. LEA FALK, <br><br> Plaintiff, <br><br> V <br><br> CITY OF SPRINGFIELD; SPRINGFIELD POLICE OFFICER CONNER O'LEARY, <br><br> Defendants. | **CASE NO.: 6:22-cv-01889** <br> _____ <br><br> **COMPLAINT** <br><br> **4ᵀᴴ AMENDMENT VIOLATIONS** <br><br> **EXCESSIVE USE OF FORCE;** <br> **and** <br> **PUNITIVE DAMAGES** <br><br> **JURY TRIAL REQUESTED** |

**JURISDICTION AND VENUE**

1. This is a civil action for damages and attorney's fees, for excessive use of

force (Fourth Amendment) under 42 U.S.C. 1983. This Claim for Plaintiff LEA MOI

PAGE 1 - COMPLAINT

arises out of a December 9, 2020, arrest and assault by Officer Connor O'Leary.

2. Jurisdiction for the federal claims exists under 28 U.S.C. 1331 because this action arises under the laws of the United States.

3. Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. 1391(b) in that this is a civil action wherein jurisdiction is not founded on diversity of citizenship and plaintiff's claims arise within this judicial district.

## PARTIES

4. At all relevant times, plaintiff was a resident of Lane County, Oregon, is a citizen and resident of the State of Oregon and the United States.

5. Defendant City of Springfield is a duly organized municipal corporation under Oregon law, Chapters 221-225, and a public body liable for tortious conduct of its agents and employees pursuant to ORS 30.260 and ORS 30.265(1).

6. Defendant Officer Connor O'Leary is sued in his individual official capacity. He was at all times relevant an officer of the Springfield Police Department.

7. The individual defendant's acts which are the subject of this lawsuit were undertaken in the regular course of his employment for defendant Springfield.

## FACTUAL OVERVIEW

8. Paragraphs 1 thru 6 are incorporated herein.

9. December 9, 2020, O'Leary pursued plaintiff as she drove away from a

traffic stop. Her vehicle stopped after getting stuck in a field. O'Leary sicked his dog on her, whereby the dog punctured her arm, holding her in place until O'Leary caught up with her, then beat her so badly he broke one of her eye sockets, two of her teeth, with muscle separation in her arm, including other injuries long term while only currently being diagnosed. O'Leary gave Detective Seanor all the money seized, who then, without agreement or knowledge by plaintiff, gave the money to Plaintiff's estranged husband.

10. Following a high-speed car chase, followed by a pursuit on foot, plaintiff was properly arrested, taken to a hospital, then lodged in Lane County Jail for 30 days. Her injuries can, in part, be seen in the attached photographs.

11. O'Leary's explanation of events does not comport, or explain, the multitude and severity of her injuries.

12. She required, and still requires, many visits to many doctors, for many procedures, to correct or repair these multiple injuries.

### FIRST CLAIM FOR RELIEF
### Violation of Constitutional Right to Substantive Due Process
### Excessive Force - Seizure)
### (42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution)

(Individual Defendant Officer Connor O'Leary)

13. The foregoing paragraphs are incorporated herein by reference.

14.  By his actions as described herein, individual defendant O'Leary used force on plaintiff that was not objectively reasonable considering the facts and circumstances confronting him.

15.  O'Leary seized Plaintiff's money, approximately $3,000, in violation of the Fourth and Fourteenth (due process) Amendments caused these funds to not be returned to her.

16.  By his actions as described herein, individual defendant O'Leary acting under color of statute, ordinance, regulation, custom, or usage, subjected plaintiff to deprivation of rights, privileges, or immunities secured by the Constitution and laws, namely, plaintiff's liberty interest in freedom from excessive force.

17.  As a result of the individual defendant's actions and inactions against Plaintiff alleged herein, plaintiff suffered, and suffers, serious injury to her back, shoulders, eyes, face, teeth and mouth, emotional distress.

18.  As a result of the individual defendant's actions and inactions alleged herein, plaintiff suffered physical injuries from being punched in the face repeatedly, tackled and bitten by the police dog, subject to excessively tight handcuffing causing long term injuries to her wrists, along with emotional distress, along with heretofore undiagnosed injuries.  As a direct result of the individual defendant's actions and inactions alleged herein, Plaintiff incurred economic damages, in an amount to be determined at trial, for medical expenses, including lost wages.

19.  As a direct result of the individual defendant's actions and inactions alleged herein, plaintiff sustained noneconomic damages in an amount to be determined at trial, pain and suffering, and loss of enjoyment of life.

20. The actions of the individual defendant, as described in this complaint, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon plaintiff; and as a result of said intentional conduct, plaintiff is entitled to punitive damages against defendant in an amount sufficient to punish him and deter others from like conduct.

21.  Plaintiff was required to hire attorneys to represent her in this matter and are entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

22.  Plaintiff is entitled to a jury trial.

### SECOND CLAIM FOR RELIEF
**(Municipal Liability Claim - 42 U.S.C. § 1983;**
**Monell v. Dept. of Social Services and Adickes v. Kress)**
**(Excessive Force)**
(Defendant City of Springfield)

23. The foregoing paragraphs are incorporated herein by reference.

24. The following paragraphs represent a history of Springfield police excessive force, including lethal force, undisciplined or punished in any way.

25.   On April 18, 2019, Defendant Chief Lewis empaneled a Use of Force Review Board ("Board") to conduct an internal administrative review of defendants

Akins', R.A. Lewis', Rosales' and Conrad's uses of force against Stacey Kenny, Case No. 6:19-cv-01519-AA, charging the Board, as follows:

26. Lt. Boring, per General Order 1.5.1 you will chair a use of force board to determine findings of fact as to the circumstances surrounding the incident where Sgt. RA Lewis utilized deadly physical force on March 31,2019. The board shall consider the reasonableness of all the officers' actions regarding the entire event from the initial contact to the conclusion of the incident.

27. The Board will make a written recommendation to me upon their final conclusion as to whether the use of force was within policy plus any training recommendations they deem appropriate. Board members will be supplied with the IDFIT team reports, videos and audio and have the authority to call witnesses before the board if needed.

28. None of the Board members selected by Chief Lewis were trained in how to conduct an administrative use of force review and at least one member was known by the Chief to have been selected by defendant R.A. Lewis to be his advocate on the Board. The Board was not provided with standards and guidelines for the review and was excused from making "findings of fact as to the circumstances surrounding the use of force" required by defendant City's written Use of Force Policy, General Order 1.5.1. In conducting its administrative review, the Boar interviewed no witnesses, conducted no independent investigation and relied exclusively on the case book assembled by the Interagency Deadly Force

Investigation Team (IDFIT).

29. At all times material, Chief Lewis knew that the IDFIT investigators did not gather evidence relevant to the determinations whether Defendants Akins, R.A. Lewis, Rosales and Conrad followed Defendant City's policies, violated Ms. Lea Moi's constitutional rights, or exercised competent tactical decision making and judgment consistent with their training.

30. On June 13, 2019, the Board submitted a one-page Memorandum to Chief Lewis, setting forth its recommendation, in relevant part, as follows:

31. The Board finds that the actions of Sergeant Lewis on March 31, 2019, have been found to be consistent with Springfield Police use of force policy 1.5.1 and ORS 161.239 governing the use of deadly force in making an arrest.

32. On June 19, 2019, Chief Lewis adopted the recommendation of the Board:

33. Sgt. Lewis, the administrative investigation of the shooting incident you were involved in on March 31,2019 is complete. The investigation included a review of the Inter Agency Deadly Force Investigation Team's report and the findings by the Department's Use of Force Board per General Order 1.5.1 Section 10. Additionally, Lane County District Attorney Patty Perlow ruled that your use of deadly physical force was justified.

34. I find that your use of deadly physical force on March 31,2019 was appropriate and justified per Springfield Police Department Policy. Your actions are also deemed to be in accordance with Oregon law. Therefore, you are cleared to return

to full duty pending release by your doctor for the injuries you sustained during this incident.

35. Between October 1999 and March 31, 2020, Defendant City's officers were involved in 16 deadly force events, including the deaths of Stacy Kenny and Chase Brooks, as well as the shooting by defendant Pardee of unarmed Scott William Boyko, 37, by a single gunshot to the chest. In each case, Defendant City, acting through a Use of Force Review Board appointed by the Chief of Police, conducted administrative reviews relying exclusively on evidence collected in connection with the criminal investigation conducted on behalf of the District Attorney. Defendant City provides no training to Board members in how to conduct administrative reviews of deadly force incidents. No administrative review has examined the pre-shooting tactical decision making to assess whether tactical deficiencies or disregard of officer safety training placed the officer in the situation in which deadly force was used. No Springfield police officer has been disciplined for using deadly force nor for disregard of training or other incompetence precipitating the use of deadly force. In every case the officer's actions were found to be within law and policy.

36. At least since October 6, 2014, defendant City has had actual knowledge that its officers were not being disciplined, reprimanded nor punished for unconstitutional uses of deadly force due to the City's maintenance of an administrative review process that fails to properly investigate use of deadly force events.

37. On June 26, 2005, Springfield Officer Ethan Spencer shot and killed an

unarmed 15-year-old. Upon information and belief, previous to this shooting two Springfield officers reported to Springfield Sgt. John Umenhofer concerns that Officer Spencer seemed fixated on killing someone and was mentally unstable. Sgt. Umenhofer brought these concerns to the attention of then Captain Richard L. Lewis. Captain Lewis took no action.

38. On July 13, 2005, Captain Richard L. Lewis chaired the administrative Use of Force Review Board that conducted the administrative review of Officer Spencer's use of deadly force. The Board's two-page recommendation to then Chief Jerry Smith makes no reference to the earlier reports of Officer Spencer's mental instability. The Board did not examine whether Officer Spencer's preshooting tactical decision making – disregard of training in vehicle pursuit, high risk stop and officer safety procedures that were apparent on the face of the Board's factual summary of the event – was consistent with SPD policy, training and expectations. The Board's conclusion that Officer Spencer's actions were consistent with the law and Springfield use of force policy was adopted by Chief Smith.

39. On October 6, 2014, John S. Umenhofer filed a lawsuit against defendant City which alleged defendant City's longstanding pattern and practice of acquiescing in officer misconduct up to and including unlawful use of deadly force in connection with the Ethan Spencer shooting.

40. At least since 2013, Defendant City has collected data about its department's use of force in a records management system which can be queried to produce officer

specific printouts of use of force events. Defendant does not analyze use of force data, track use of force events by individual officer, track use of force events by injury to citizens, track use of force events by injury to officers nor otherwise use such data to identify organizational needs for improvement, supervision, training and discipline.

41. In April of 2017, Defendant Akins reported to Defendant City that he broke his left hand (a brawler's fracture) punching a suspect in the face who had run from him "to gain compliance." Upon information and belief, this use of force was unnecessary and inconsistent with training. Defendant Akins received no counseling nor discipline as a consequence of this use of force.

42. From January 1, 2016 to December 31, 2018, defendant City employed an average of 46 patrol officers. In each of calendar years 2016, 2017 and 2018 the same six Springfield police officers accounted for 32% of all use of force events. The number of each of said officers' uses of force in each year was 3 to 5 times the median number of force events. Defendant Pardee was one of the six officers.

43. From January 1, 2016, through present day every reported use of non-deadly force was approved by the responsible watch commander or patrol sergeant.

44. Defendants City of Springfield and Chief Richard L. Lewis, acting as final policy maker for City of Springfield Police Department, violated Lea Moi's Fourth Amendment rights by adopting or engaging in the longstanding de facto policies or customs of inadequate administrative investigation and review of shootings by SPD officers and failure to hold officers accountable for unreasonable uses of deadly and

non-deadly force by supervision and discipline. These policies or customs have fostered a culture of tolerance for unreasonable use of force.

45. Defendant City's policies, customs and practices were instituted with deliberate indifference to the protected Fourth Amendment interests of Lea Moi and other similarly situated persons. Defendant City's policies, customs and practices permit, encourage and ratify recurrent unauthorized and unreasonable use of force and were the moving force behind defendant's use and application of excessive force against Lea Moi.

46. Former Chief Rick L. Lewis, following a complete review and with full knowledge of the facts and circumstances of defendants Akins's, R.A. Lewis's, Rosales's and Conrad's conduct, ratified, condoned and approved of said defendants' conduct.

47. Pursuant to 42 U.S.C. § 1988, plaintiffs are entitled to recover their attorney fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests a jury trial, demands judgment in her favor against defendants for the relief sought herein; for her reasonable costs and attorney fees punitive damages, and for any other relief deemed appropriate by the court.

Respectfully submitted this _____ day of December 2022,

BY:

s/ BRIAN MICHAELS
BRIAN MICHAELS OSB # 925607
Attorney for Plaintiff
259 E. 5th Ave., Ste 300-d
Eugene, Oregon 97401
541.687.0578

PAGE 12 - COMPLAINT