UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

LEA MOI, A.K.A. FALK,

                Plaintiff,

v.

SPRINGFIELD POLICE OFFICER
CONNER O'LEARY,

                Defendant.

Case No. 6:22-cv-01889-MK

**OPINION AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

    Plaintiff filed this civil rights lawsuit under 42 U.S.C. § 1983 ("Section 1983") against Defendant Conner O'Leary.[1] Before the Court is Defendant's Motion for Sanctions (ECF No. 34). For the following reasons, Defendant's motion is granted.

## BACKGROUND

    Plaintiff filed this action on December 6, 2022. Compl., ECF No. 1. She alleges that, on December 9, 2020, Springfield Police Department Officer Conner O'Leary subjected her to

/ / /

---

[1] Although the Complaint initially named the City of Springfield as a defendant as well, it has since been dismissed. ECF No. 45.

Page 1 — OPINION AND ORDER

excessive force during her arrest—including with the use of a police dog—which amounted to a violation of her Fourth and Fourteenth Amendment rights. *Id*.

As relevant to this motion for sanctions, the Court initially set a discovery deadline in this case for September 1, 2023. ECF No. 13. It subsequently extended the discovery deadline to November 1, 2023, pursuant to an unopposed motion. ECF No. 21. Plaintiff's counsel later filed an opposed motion for extension of time seeking an additional 90 days for discovery. ECF No. 22. That motion noted that Plaintiff's counsel's office had lost its assistant of 22-plus years, was training a current assistant, and suffered a computer crash. *Id*. Following briefing on the motion, the Court granted it in part and set a January 2, 2024, discovery deadline. ECF No. 30.

On December 19, 2024, Plaintiff's counsel conferred with Defense counsel regarding an additional extension of time to complete discovery. Hisel Decl. Ex. 1, ECF No 35-1. At 1:03pm, Defense counsel emailed Plaintiff's counsel stating Defendant's position on the motion: "We would agree to an additional 30 days to get Dunn's deposition done and resolve other outstanding discovery issues. We are not agreeing to additional and/or new discovery at this point." Hisel Decl. Ex. 3. Nevertheless, at 1:15pm, Plaintiff's counsel responded that Defense counsel should expect a request for production (RFP) by week's end. Hisel Decl. Ex. 2.

About an hour and a half later, at 2:41pm, Plaintiff's counsel filed an "Unopposed Motion for 30-day Extension of Court Established Deadlines." ECF No. 31. While the motion noted that the *reason* for the extension was to allow an opportunity to conduct depositions, it did not specify that discovery was to be so limited. *Id*. The motion included a certification that "Counsel for plaintiff and defendants conferred on this motion. Defense counsel is UNOPPOSED to this motion." *Id*. (capitalization in original). Relying on Plaintiff's counsel's

/ / /

representation that the motion as filed was unopposed, the Court granted it on December 21, 2023. ECF No. 32.

The next day, December 22, 2023, Plaintiff served Defendant with an additional RFP seeking photographs and documents related to the police dog at issue in this case. Hisel Decl. Ex. 1, ECF No. 35-1.

## STANDARDS

Courts are vested with the inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted). Such powers "must be exercised with restraint and discretion," including the discretion to fashion an appropriate sanction for conduct which abuses the judicial process. *Id.* at 44-45. Such sanctions may range from dismissal of a lawsuit to the less severe sanction of assessing attorney fees. *Id.* at 45. "If a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Id.* at 46 (internal quotations and citation omitted). More precisely, sanctions under the Court's inherent powers are available if "the court specifically finds bad faith or conduct tantamount to bad faith," including "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez,* 239 F.3d 989, 994 (9th Cir. 2001)."[2]

---

[2] While Defendant's motion also includes a request for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, Defendant's motion does not indicate whether it was served on Plaintiff prior to filing with the Court as required by Rule 11(c)(2) (a motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service"). The Court is without authority to grant sanctions under Rule 11 absent compliance with the safe harbor provision of Rule 11(c)(2). *Holgate v. Baldwin,* 425 F.3d 671, 678 (9th Cir. 2005) ("We enforce this safe harbor provision strictly").

Page 3 — OPINION AND ORDER

**DISCUSSION**

I.  **Whether Sanctions Are Warranted**

Defendant moves for sanctions against Plaintiff's counsel based on an alleged intentional and material misrepresentation to the Court regarding Defendant's consent to a motion for extension of time to complete discovery. For the reasons below, the Court finds that Plaintiff's counsel's conduct was in bad faith, and sanctions are warranted.

The record before the Court establishes that Plaintiff's counsel knew that the scope of Defendant's consent to the discovery extension was limited, and that he nevertheless presented a motion to the Court without such limitations and certified that it was "unopposed." In particular, as explained above, Defense counsel explicitly stated the scope of his consent to the discovery extension to Plaintiff's counsel in an email. The timing of Plaintiff's counsel's response to that email confirms that he received it prior to filing the "unopposed" motion. Under these facts, Plaintiff's counsel's certification to the Court that the motion was unopposed constituted a clear misrepresentation of fact.

The record in this case also supports a finding of "bad faith or conduct tantamount to bad faith," such as "improper purpose." *See Fink,* 239 F.3d at 994. Specifically, the Court finds that the record supports that Plaintiff's counsel's misrepresentation about Defendant's consent was made for the improper purpose of rendering an otherwise untimely request for production timely. Although the RFP at issue was served before the preexisting January 2, 2024 discovery deadline, it was nevertheless untimely because Defendant's response to it would not have been due until after the discovery deadline. The Local Rules provide that the discovery deadline "establishes the time for *completion* of discovery" and that "The Court will not require a response to a discovery request that is made with insufficient time for a party to respond before the completion of

discovery date." LR 16-2(e) (emphasis added). Thus, but for the extension granted by the Court in response to the "unopposed" motion, Plaintiff's RFP would have been untimely. Defense counsel's email explicitly stated that he opposed an extension of discovery except as specified, and Plaintiff's counsel's response confirms his receipt of that limitation. Nevertheless, Plaintiff's counsel filed the open-ended motion for extension less than two hours later. Such conduct is tantamount to bad faith because it evidences a misrepresentation made to the Court for the improper purpose of obtaining otherwise untimely discovery.

While Plaintiff's counsel provides several arguments that his conduct was not made for any improper purpose, those arguments are undermined by the evidence. First, Plaintiff's counsel argues that the timing of his request was due to a recent deposition during which the existence of the discovery came to light. But that explanation is belied by the timing and substance of the emails surrounding the request for extension. Even if it is true that the need for the discovery only recently came to light—a dubious proposition on its own considering the allegations in the Complaint regarding the use of a police dog—that does not render Plaintiff's counsel's conduct here innocent. If Plaintiff's counsel believed that the deposition revealed the need for additional discovery, that should have been part of the conferral process related to the motion for extension. Instead, Plaintiff's counsel only mentioned it in response to Defense counsel's express limitation on his consent, and then did not wait for a response before filing an "unopposed" motion in direct contradiction to Defense counsel's position. Thus, the context, timing, and content of the communications between counsel leading up to the misrepresentation at issue undermines Plaintiff's counsel's explanation and is strong evidence of improper purpose.

Second, some of Plaintiff's response to Defendant's motion pertains to the tragic loss of Plaintiff's counsel's "daughter-type assistant of 22 plus years." Pl. Resp. 1. While the Court is

sympathetic to Plaintiff's counsel for his loss, there is no logical nexus between it and the conduct at issue. The conduct for which Defendant seeks sanctions is Plaintiff's counsel's representation to the Court that an open-ended extension of the discovery deadline was unopposed when in fact Defense counsel had specifically noted during conferral that Defendant only consented to an extension of discovery for a limited purpose. Plaintiff's counsel's tragic loss simply does not relate to a factual representation to the Court about the outcome of conferral on a motion.

While the Court recognizes that sanctions under the Court's inherent authority are an extraordinary remedy, the exercise of that authority "is particularly appropriate when the offending parties have practiced a fraud upon the court" and reaches "acts which degrade the judicial system." *Chambers*, 501 U.S. at 42. The misrepresentation at issue here is a dangerous one that seriously disrupts and degrades the operation of the Court's docket. The Court regularly grants unopposed motions in reliance on parties' representations that they are, in fact, unopposed. When a lawyer represents to the Court a position of another party that may result in the Court granting a motion that party would otherwise be entitled to oppose, the duty to accurately reflect the other party's position is of paramount importance.

In sum, the Court finds that Plaintiff's counsel's misrepresentation in his December 19, 2024 "Unopposed Motion for 30-Day Extension of Court Established Deadlines" was conduct tantamount to bad faith and exercises its discretion under the circumstances to impose sanctions pursuant to its inherent power. Specifically, Plaintiff's counsel's sanction shall compensate Defendant for the costs incurred due to Plaintiff counsel's misconduct. *Lu v. United States*, 921 F.3d 850, 859 (9th Cir. 2019) (sanctions "may include the assessment of attorneys' fees against a party that has acted in bad faith) (internal citation and quotations omitted).

## II.     Amount of Sanction

An award of attorney fees pursuant to the Court's inherent power "must be compensatory, rather than punitive" in nature. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). The Court must therefore "establish a causal link between the litigant's misbehavior and legal fees paid by the opposing party." *Id.* Here, Defense counsel has submitted an affidavit supporting the attorney fees sought, which includes an itemized list of expenses related to conferring on the issue and bringing the instant motion for sanctions. Hisel Decl. ¶ 7. Such conferral and motion would not have been necessary but for Plaintiff's counsel's misconduct and are therefore appropriate compensatory sanctions.

Having determined that the attorney fees Defendant seeks are causally related to Plaintiff's counsel's misconduct, the Court turns to whether the requested fees are reasonable. The determination of a reasonable attorney's fee begins with the "lodestar" method, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563–64 (1986). The party seeking an award of fees bears "the burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-rated Emps. of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quotations omitted).

When "determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In making that determination, courts consider the following "*Kerr*" factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). A rote recitation of the relevant factors is unnecessary as long as the court adequately explains the basis for its award of attorney fees. *McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 809 (9th Cir. 1995).

As already noted, Defendant's motion for sanctions included an affidavit supporting the fees and costs incurred by Defendant in bringing the motion. Plaintiff's response did not contest the amount of fees sought, only whether they should be awarded at all. Nevertheless, the Court must evaluate whether the fees sought are reasonable.

The Court has reviewed Defense counsel's supporting affidavit and finds that Defendant's requested fees in the amount of $3,750 are reasonable. Defense counsel has submitted a detailed log of the hours spent related to this motion, and the charges appear to be reasonable based on the descriptions of the tasks. Hisel Decl. ¶ 7. Taking into consideration the relevant *Kerr* factors, a total of fifteen hours to confer on the motion and prepare it as well as a reply does not appear unreasonable. The reasonableness of the fees is further supported because Defense counsel's summary does not include preparation and appearance for oral argument on the motion. Thus, if anything, it is underinclusive of the hours spent related to the motion for sanctions.

In addition, the $250 hourly rate Defendant seeks is reasonable as it is supported by the Oregon State Bar's 2022 Economic Survey and Defense counsel's relevant experience and years of practice. *Id*. ¶¶ 8-9.

Applying the lodestar method, the Court finds that Defendant's requested fees are reasonable. Accordingly, the Court exercises its discretion to sanction Plaintiff's counsel in the amount of $3,750 in attorney fees, payable to Defendant.

## CONCLUSION

For the reasons above, Defendant's Motion for Sanctions (ECF No. 34) is GRANTED, and sanctions are imposed against Plaintiff's counsel in the amount Defendant's reasonable attorney fees incurred in bringing this motion, totaling $3,750, to be paid to Defendant.

DATED this 15th day of August 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge